Douglas A. **KROMER** and Valerie **Kromer, Plaintiffs,**

v.

**BEAZER EAST, INC.,** formerly Beazer Materials & Services, Inc., formerly Koppers Company, Inc., Container Machinery Division, a corporation, and United Container Machinery Group, Inc., a corporation, **Defendants.**

**BEAZER EAST, INC.,** formerly Beazer Materials & Services, Inc., formerly Koppers Company, Inc., Container Machinery Division, a corporation, and United Container Machinery Group, Inc., a corporation, **Third–Party Plaintiffs,**

v.

**ST. JOE CONTAINER COMPANY,** Third-party Defendant.

No. 91–CV–6484T.

United States District Court, W.D. New York.

June 15, 1993.

---

Bohdan Wenglowskyj, Gough, Skipworth, Summers, Eves & Trevett, Rochester, NY, for plaintiffs.

Richard E. Alexander, Harter, Secrest & Emery, Rochester, NY, Stephen Rachlis, Braunschweig, Rachlis, Fishman & Raymond, P.C., New York City, for Beazer East, Inc. and United Container Machinery Group, Inc.

Robert T. DiGuilio, Osborne, Reed, Van de Vate, Burke & Tobin, Rochester, NY, for St. Joe Container Co.

## DECISION AND ORDER

TELESCA, Chief Judge.

### BACKGROUND

Plaintiff Douglas A. Kromer was injured while cleaning a printer/slotter press, a machine used in the manufacture of corrugated cardboard boxes and manufactured in 1974 by Koppers Company, Inc., Container Machinery Division ("Koppers"). The injury occurred on May 9, 1989, during Kromer's second day of employment at St. Joe Container Company in Rochester, New York. Kromer was injured when the machine was taken apart into various sections for cleaning. The machine was equipped with a safety interlock device which cut the power to the printer/slotter's main drive when its sections were pulled apart either to change the print dies or to clean or adjust the machine. The accident occurred when Kromer's right hand and arm got caught between two rotating rollers that formed an in-running "nip point" on one of the machine's sections. Unfortunately, the interlock safety device had been disabled by tying up the main drive safety interlock switch with a rag or string which would have prevented the machine from operating during the process of cleaning the machine's print rolls and setting the machine for its next job.

Plaintiffs filed this action against Koppers, the designer, manufacturer and distributor of the printer/slotter machine which in turn filed a third-party complaint against the employer, St. Joe Container Company. In their complaint, plaintiffs assert the following causes of action: (1) strict product liability; (2) negligence; (3) negligence and strict liability as to the breach of Koppers' continuing duty to warn; (4) negligence in not warning users despite defendants' awareness of accidents involving the printer/slotter, and (5) a derivative claim by Valerie Kromer as a result of the physical injuries sustained by her husband.

Defendant United Container Machinery Group, Inc. ("United Container")[1] now moves for summary judgment pursuant to Fed.R.Civ.P. 56 arguing that, as a matter of law, the manufacturer of a machine or other product cannot be held liable for injuries caused by a third-party's modification of the product. According to defendant, tampering with the safety switch constituted a substantial modification that absolved it from liability for injuries proximately caused by the modification. Plaintiffs oppose this motion arguing that the issues of the failure to properly design a reasonably safe product and the duty to warn the user of the machine as to the gravity of the harm, and the continuing duty to warn the user upon knowledge of a design defect are issues of fact to be resolved by a jury. I disagree, and for the reasons stated herein, dismiss the complaint.

## DISCUSSION

■ "In a strict products liability action a plaintiff may assert that the product is defective because of a mistake in manufacturing, because of improper design, or because of the manufacturer's failure to provide adequate warnings regarding the use of the product." *Fane v. Zimmer, Inc.*, 927 F.2d 124, 128 (2nd Cir.1991), *citing, Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983). In this case, plaintiffs allege both improper design and failure to warn. Plaintiffs also contend that the injuries sustained were proximately caused by defendants' negligence.

■ It is well settled that a manufacturer of a product may not be held liable in a strict products liability or negligence cause of action where, after a product leaves possession and control of the manufacturer, there is subsequent modification which substantially alters the product and is the proximate cause of plaintiff's injuries. *Robinson v. Reed–Prentice Div. of Package Machinery Co.*, 49 N.Y.2d 471, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980). This defense is available to the manufacturer whether the action is based on either theory of design defect or failure to warn. *Frey v. Rockford Safety Equipment Co.*, 154 A.D.2d 899, 546 N.Y.S.2d 54 (1989). Courts have not hesitated in granting summary judgment in favor of a defendant manufacturer where, once in the hands of the purchaser, the product which caused the injury was modified in a way that substantially altered the product and was the proximate cause of the plaintiff's injuries. *Frey*, 154 A.D.2d 899, 546 N.Y.S.2d 54 (no manufacturer liability for safety components incorporated into a punch press where employer installed switch that allowed press to be operated without barrier device); *Kingsland v. Industrial Brown Hoist Co.*, 136 A.D.2d 901, 524 N.Y.S.2d 929 (1988) (no manufacturer liability where employer removed pawl which served as safety device to prevent the uncontrolled dropping of the apron of the bridge when all other safety devices failed to operate). An exception to the subsequent modifications defense may be invoked under the design defect theory where the product is purposefully manufactured so as to permit its use without a certain safety feature which was designed to be removable. *Lopez v. Precision Papers, Inc.*, 107 A.D.2d 667, 484 N.Y.S.2d 585 (1985), *aff'd*, 67 N.Y.2d 871, 501 N.Y.S.2d 798, 492 N.E.2d 1214 (1986).

■ Under the *Robinson* standard, I must determine whether the Koppers printer/slotter which caused Kromer's injuries was modified after it left Koppers' hands in a way which substantially altered it, and whether this modification was the proximate cause of plaintiff's injuries.

---

1. Prior to April 25, 1986, United Container acquired the assets of Koppers Company, Inc., Container Machining Division and has since serviced products of the former Koppers and maintained and used the same plant and continued the same enterprise of Koppers.

The interlock device in the Koppers printer/slotter cuts power to the machine's main drive when the printer/slotter's sections are pulled apart. The interlock is triggered by a spring-loaded mechanical switch. When the printer/slotter is closed, the interlock switch is held in place in a raised position, allowing power to reach the main drive. When the printer/slotter is pulled apart, the switch is automatically tripped, dropping into a lowered position, where it remains until the printer/slotter is closed. Therefore, power to the machine's main drive is cut off when the machine is pulled apart.

It is undisputed that the Koppers printer/slotter which caused plaintiff's injuries was not disabled by the operation of the safety interlock switch at the time of the accident and that the printer/slotter rollers, therefore, were turning while plaintiff's hand was in between the printer/slotter's sections. Disabling the safety interlock switch by tying it up with a rag or string was a common practice for the operators and helpers of the Koppers printer/slotter press for purposes of versatility and to speed up the set up and cleaning up process of the machine. (Kuhn Deposition at p. 114). Not only was disabling the switch common practice, it was effectively required. Mr. Michael L. Kanada, an employee of St. Joe Container's Company testified that he was given a "verbal warning" for refusing to enter the open printer/slotter while the interlock switch was tied back. (Kanada Deposition at p. 178). The employees and managers at St. Joe Container Company were aware of the dangers of entering the Koppers printer/slotter while the parts were in motion. However, since cleaning the machine while still running only took two hours instead of six hours and thus affected productivity, the practice of tying up the machine was adopted. (Stemmer Deposition at pp. 159–160). Since it was a matter of *common practice* to intentionally disengage the interlock switch by the employees at St. Joe, the functional utility of the Koppers printer/slotter's safety features was effectively defeated. "Material alterations at the hands of a third party which work a substantial change in the condition in which the product was sold by destroying the functional utility of key safety feature, however foreseeable that modification may have been, are not within the ambit of a manufacturer's responsibility." *Robinson,* 49 N.Y.2d at 481, 426 N.Y.S.2d 717, 403 N.E.2d 440. The disabling of the safety interlock switch by tying it up with a rag or a piece of string is, as a matter of law, a substantial alteration of the Koppers printer/slotter.

■ However, plaintiffs insist that the accessibility of the safety switch (thus allowing it to be altered), the lack of warnings and the lack of secondary safety devices create an issue of fact for the jury with regard to whether or not the machine was defectively designed. I disagree. Mr. Kromer's deposition testimony shows that prior to beginning work inside the machine, he noticed the warning sign at the entranceway of the aisle stating "Danger. Do not clean, oil or repair machinery while in motion." (Kromer Deposition at p. 138). Mr. Kromer understood that it was dangerous to go inside the machine while it was in motion. (Kromer Deposition at p. 139). Despite the warning and the safety interlock switch, Kromer and other employees of St. Joe Container Company entered the machine disregarding the dangers of operating it while its parts were in motion. As in the *Robinson* case, had the Koppers printer/slotter been left intact plaintiff would not have been injured. The testimony of plaintiffs' own expert supports this finding. (Voelker Deposition at pp. 132–133).

■ No manufacturer is required to incorporate "... safety features into its product so as to guarantee that no harm will come to every user no matter how careless or even reckless (citing cases). Nor must [the manufacturer] trace his product through every link in the chain of distribution to insure that users will not adapt the product to suit their own unique purposes." *Robinson,* 49 N.Y.2d at 481, 426 N.Y.S.2d 717, 403 N.E.2d 440.

■ The manufacturer's duty extends to the design and manufacture of a finished product which is safe at the time of sale. The record shows that, as designed, the printer/slotter sold to St. Joe Container had warnings against its use while the parts were in motion and was equipped with a safety interlock switch which would cut off power to the machine when its sections were opened thus preventing injuries to an operator. The record further shows that on two different

occasions a safety bulletin was sent to St. Joe Container Company emphasizing the importance that the machine was never to be operated while its parts were in motion and that the interlock switch should not be tampered with for user safety. The same bulletins emphasized the importance of instructing users concerning safety practices, and further offering special warning signs free of charge. Safety Bulletin No. 4 and No. 8 stated "The major warning throughout this communication is to never run a printer/slotter or die cutter in the open position. *The proper and safe operating procedure for clean-up and set-up operation is to always stop and lockout the machine prior to unlocking and opening any section of it.*" (Exhibits A and B to Wenglowskjy Affirmation) (emphasis in original).

It is also clear that the Koppers printer/slotter was not "purposefully manufactured to permit its use without the safety guard." *Darsan v. Guncalito Corp.*, 153 A.D.2d 868, 545 N.Y.S.2d 594 (1989). Plaintiffs' complaint may not create an issue of fact simply on the basis of the alleged inadequacy of the warnings in the Koppers printer/slotter in order to survive this motion. Koppers had a duty to warn of the dangers associated with the *reasonably foreseeable* misuse of its product. *Id.* As discussed above, Koppers warned against using the machine while in motion by placing a sign on the entranceway to the machine and by sending safety bulletins to St. Joe Container Company.

The record clearly shows that the Koppers printer/slotter machine involved in the accident which caused Kromer's injuries was modified while at St. Joe Container by tying up the safety interlock switch and rendering the automatic shut-off mechanism inoperable. I find that this alteration was the proximate cause of Kromer's injuries. A manufacturer who sells equipment with a safety device that could have prevented the accident is not liable when the employer "consciously bypasses built-in safety features." 49 N.Y.2d at 480, 426 N.Y.S.2d 717, 403 N.E.2d 440. Based on the undisputed record, therefore, there are no triable issues of fact requiring jury determination and defendant United Container is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### CONCLUSION

For the reasons set forth above, defendant United Container's motion for summary judgment is granted and since plaintiff cannot recover against his employer, the third-party complaint is dismissed as well. Since plaintiff Valerie Kromer's claims are derivative of her husband's tort claims, those claims must also be dismissed. *Haspil v. Church of St. Cyril*, 128 Misc.2d 968, 971, 491 N.Y.S.2d 914 (1985). Accordingly, the plaintiff's complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.