■ SAMUEL PASSANTE et al., Respondents, v AGWAY CONSUMER PRODUCTS, INC., Doing Business as G & P FRESH PAC, et al., Defendants, and MULLEN INDUSTRIAL HANDLING CORP., Appellant. [741 NYS2d 624] —Appeal from an order of Supreme Court, Onondaga County (Major, J.), entered April 23, 2001, which denied the motion of defendant Mullen Industrial Handling Corp. for summary judgment.

It is hereby ordered that the order so appealed from be and the same hereby is reversed on the law without costs, the motion is granted and the amended complaint against defendant Mullen Industrial Handling Corp. is dismissed.

Memorandum: Supreme Court erred in denying the motion of defendant Mullen Industrial Handling Corp. (Mullen) seeking summary judgment dismissing the amended complaint against it. Samuel Passante (plaintiff) was injured while operating a dock leveler purchased from Mullen by plaintiff's employer, defendant Agway Consumer Products, Inc., doing business as G & P Fresh Pac (G & P). Upon observing a tractor trailer back into the loading dock, plaintiff engaged the dock leveler in order to create a "bridge" between the loading dock and the floor of the trailer. He then stood on the platform in order to lower the platform of the dock leveler to the level of the truck. In order to exert enough force to lower the platform, plaintiff, who then weighed approximately 140 to 145 pounds, stepped onto the lip of the platform. The truck pulled forward

and the lip returned to a vertical position, causing plaintiff to fall.

We conclude that Mullen established its entitlement to judgment dismissing the claim that the dock leveler was defectively designed because it lacked standard safety equipment. "The product is not defective where the evidence and reasonable inferences therefrom show that: (1) the buyer is thoroughly knowledgeable regarding the product and its use and is actually aware that the safety feature is available; (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment; and (3) the buyer is in a position, given the range of uses of the product, to balance the benefits and the risks of not having the safety device in the specifically contemplated circumstances of *the buyer's* use of the product. In such a case, the buyer, not the manufacturer, is in the superior position to make the risk-utility assessment, and a well-considered decision by the buyer to dispense with the optional safety equipment will excuse the manufacturer from liability" (*Scarangella v Thomas Built Buses,* 93 NY2d 655, 661).

Here, Mullen met its initial burden with respect to the defective design claim and plaintiffs failed to raise a triable issue of fact (*see Geddes v Crown Equip. Corp.,* 273 AD2d 904). The facility manager responsible for purchasing the dock leveler system testified at his deposition that the optional safety equipment was not practical for use at the G & P facility. Furthermore, G & P's policy required that the wheels of the tractor trailer be "chocked" to prevent it from moving before the dock leveler was operated, and both the driver of the tractor trailer and plaintiff admitted that they were aware of the policy. Plaintiff believed, however, that the tractor trailer had been turned off and, because of the slope of the area, believed it could not roll away and therefore did not check to determine whether the wheels were chocked. In fact, the driver backed into the loading dock but decided to adjust the angle of the trailer and pulled away from the loading dock, unaware that plaintiff had engaged the dock leveler. The driver did not turn off the tractor trailer and had not chocked the wheels prior to pulling away from the loading dock. We conclude that Mullen established that G & P was in the best position to know whether it needed the optional safety equipment (*see Scarangella,* 93 NY2d at 661), and plaintiffs failed to raise an issue of fact.

Mullen also established its entitlement to judgment dismissing the claim that Mullen failed to warn of the risks of the

dock leveler. "Although the adequacy of a warning generally is a question of fact, 'in a proper case the court can decide as a matter of law that there is no duty to warn or that the duty has been discharged as a matter of law'" (*Alessandrini v Weyerhauser Co.,* 207 AD2d 996, 996). Plaintiff acknowledged that he understood that the dock leveler would drop if not supported by the bed of the trailer. Furthermore, there were warnings posted near the area. In addition, Mullen established its entitlement to judgment as a matter of law on the claim that the dock leveler had a manufacturing defect. Mullen met its initial burden with respect to both of those claims, and the affidavits of plaintiffs' experts were speculative and lacked sufficient probative value to raise an issue of fact (*see Fallon v Hannay & Son,* 153 AD2d 95, 101-102; *see also Merritt v Raven Co.,* 271 AD2d 859, 862).

Plaintiffs failed to assert a breach of warranty claim that is "not coextensive with [their] tort based claims" (*Wyda v Makita Elec. Works,* 232 AD2d 407, 408), and thus we conclude that Mullen established its entitlement to judgment dismissing that claim as well. Finally, the record establishes that the dock leveler was not installed by Mullen and that G & P had declined to purchase a maintenance agreement from Mullen. Thus, Mullen also is entitled to judgment dismissing the claim of negligent installation and maintenance of the dock leveler. We therefore reverse the order, grant the motion and dismiss the amended complaint against Mullen.

All concur except Wisner and Gorski, JJ., who dissent in part and vote to modify in accordance with the following memorandum.

Wisner and Gorski, JJ. (dissenting in part). We respectfully dissent in part. In our view, Supreme Court properly denied that part of the motion of defendant Mullen Industrial Handling Corp. (Mullen), the seller of the dock leveler, seeking summary judgment dismissing the claims for defective design and failure to warn against those defects. In seeking summary judgment, Mullen contended that, because defendant Agway Consumer Products, Inc., doing business as G & P Fresh Pac (G & P), failed to purchase optional safety equipment, Mullen cannot be held liable, relying on *Scarangella v Thomas Built Buses* (93 NY2d 655). Mullen further contended that Samuel Passante (plaintiff), G & P's employee, was aware of the hazards involved with the dock leveler, rendering any warnings unnecessary. In our view, Mullen did not establish its entitlement to dismissal of those claims.

With regard to plaintiffs' claim for defective design based on

Mullen's failure to include the "dok-lok" as standard equipment, the majority applies the *Scarangella* test and concludes that Mullen was entitled to summary judgment dismissing that claim because G & P determined that a dock-locking device was not "feasible," without explanation, for use at its facility and instead relied on a plant policy that the wheels of a tractor trailer be "chocked" prior to engaging the dock leveler. We disagree, and conclude that Mullen failed to establish its entitlement to dismissal of that claim pursuant to the test set forth in *Scarangella*. G & P's facility manager gave no mechanical or adaptability reason that would have prevented Mullen from including the "dok-lok" as standard equipment. He merely stated that trucks are "in and out relatively quickly" and that someone would have to engage and disengage the lock. Mullen's attorney conceded in his supporting affidavit, however, that, "[h]ad such a system been in place, it may have prevented the plaintiff's accident" because the restraint system also comes with a warning light advising when it is disengaged.

The exhibits to Mullen's motion belie Mullen's assertion that G & P is in the best position to determine whether a dock-locking device should have been provided as standard equipment. The brochure of defendant Rite-Hite Corporation, the manufacturer of the dock leveler, recognizes that *"[e]very time* a lift truck impacts the ramp, crosses [the Danger] Zone, and enters a trailer, the trailer can inch forward. When it moves too far, *or departs prematurely*, the lift truck and driver can tumble into the gap with disastrous results. * * * The impact of a lift truck moving in and out of the trailer during loading operations causes the trailer to inch forward slightly— *even with the brakes set and the wheels chocked. * * * [T]he truck driver*, assuming loading operations are completed, *pulls away without warning*. This unexpected departure from the dock can cause the forklift and operator to be thrown[.] * * * Wheel Chocks: ineffective, expensive" (emphasis added). Based on Mullen's knowledge of dangerous situations that are regularly recurring, Mullen failed to establish the second prong of the test set forth in *Scarangella,* that "there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment" (*Scarangella,* 93 NY2d at 661). Indeed, we submit that the manufacturer's brochure establishes that Mullen is in the best position to determine whether a dock-locking device should be provided as standard equipment where, as here, no proof has been offered to dispel the conclusion that "the dangers do not vary depending on [the] jobsite" (*Rosado v Proctor & Schwartz,* 66 NY2d 21, 26). *Scarangella* does not obliterate the principle that a

manufacturer and seller are in a superior position to discover any design defects and alter the design before making the product available to the public, especially when the manufacturer's brochure describes the safety equipment as a "low cost" item (*see Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107).

Additionally, Mullen offered no evidence to establish by way of an expert opinion that the dock leveler was safe for its intended use either with or without a dock-locking device. In fact, Mullen offered no expert opinion whatsoever, relying instead on its counsel's conclusory affidavit.

Unlike the plaintiffs in *Scarangella,* plaintiffs here assert more than the absence of optional safety equipment in support of their claim that the design of the product was defective for its intended purposes. Plaintiffs' bill of particulars alleges that the dock leveler was not fit for the purpose intended by the buyer and that the dock leveler was sold in an unreasonably dangerous condition in that the equipment collapsed upon movement of the trailer bed to which it was extended. Even assuming, arguendo, that Mullen met its initial burden with respect to the claim for defective design, we conclude that plaintiffs raised triable issues of fact. In opposition to Mullen's motion for summary judgment, plaintiffs submitted the affidavit of a mechanical engineer who asserted that the dock leveler was defectively designed inasmuch as a person under 150 pounds could not operate the product without positioning himself on the extended lip of the dock leveler, which will drop to vertical if a trailer bed moves away unexpectedly. The mechanical engineer asserted that the "unscheduled departure" of a tractor trailer is a known risk in the materials-handling industry, a fact acknowledged by the manufacturer's brochure. Furthermore, he asserted that the dock leveler, as designed, created an unreasonable risk of harm to the operator both from falls from the collapsing lip as well as from falls from the unscheduled departure of tractor trailers. Thus, we conclude that the affidavit of plaintiffs' expert raised an issue of fact. The fact that plaintiff may have been aware of some of the risks would bear on his comparative fault.

We further conclude that plaintiffs raised triable issues of fact with respect to the sufficiency of the warnings and thus that Mullen is not entitled to dismissal of the claim for failure to warn. Plaintiffs submitted the affidavit of an industrial engineer who asserted that the warnings, positioned on a wall not in proximity to the loading activity, were not sufficient to remind the operator of the dock leveler of the dangers associated with walking on the extended lip of the equipment. He

further asserted that a warning medallion at the point of operation is necessary and that safety striping or demarcation of the lip itself was necessary to inform the operator of the boundaries of the lip. The industrial engineer faulted the total lack of instruction for operators under 150 pounds, such as plaintiff, including the failure to inform such operators of the 150-pound walk-down weight necessary to operate the equipment as designed. The expert concluded that the lack of properly placed warnings combined with the complete lack of warnings or instructions concerning proper operation of the equipment by those under 150 pounds creates an unreasonable risk of harm to the operator and renders the subject equipment defective.

In our view, the court properly found that plaintiffs raised issues of fact regarding the issues of defective product design and the appropriateness of the warnings to the users of the product. We agree with the majority, however, that the claims alleging manufacturing defects, negligent installation and maintenance, and the claim for breach of warranty should have been dismissed. Present—Wisner, J.P., Scudder, Kehoe, Burns and Gorski, JJ.